UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:23-CV-00817

| | |
|---|---|
| **ROY COOK**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| **FARMERS MUTUAL HAIL INSURANCE COMPANY OF IOWA**, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

NOW COMES defendant FARMERS MUTUAL HAIL INSURANCE COMPANY OF IOWA ("FMH"), by and through its undersigned attorneys, and hereby provides this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by plaintiff ROY COOK ("Cook"). As explained herein, the causes of action set forth in the Complaint are preempted by federal law and Cook has not complied with the regulatory requirements that are a condition precedent to the recovery of statutory and extra-contractual damages against FMH.

**I. STANDARD OF REVIEW.**

"A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting 'the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory.'" *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999) (quoting *Forsyth Memorial Hosp. v. Armstrong World Indus.*, 336 N.C. 438, 442, 444 S.E.2d 423, 425-26 (1994)). A Rule 12(b)(6) motion to dismiss "should not be granted 'unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the

1

claim.'" *Id.* 350 N.C. at 604-605, 517 S.E.2d at 124 (emphasis omitted) (quoting *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970)).

## II.  INTRODUCTION.

### A.  The Federal Crop Insurance Program.

FMH sells and services federally reinsured multi-peril crop insurance ("MPCI") policies pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.* (the "Act") and in accordance with a Standard Reinsurance Agreement ("SRA") between it and the Federal Crop Insurance Corporation ("FCIC"). FMH is an Approved Insurance Provider ("AIP"), which "is a private insurance provider that has been approved by the [FCIC] to provide insurance coverage to producers participating in the Federal crop insurance program within the meaning of the Act." 7 U.S.C. § 1502(b)(2). For the 2021 crop year, Cook was an FMH policyholder insuring flue-cured tobacco in Guilford County, North Carolina under a federally reinsured MPCI policy.

With a few exceptions, FCIC publishes the MPCI policies as regulations. *See* 7 C.F.R. §§ 457.8 *et seq.* An MPCI policy generally consists of three separate policies that together establish the terms and conditions of eligibility and coverage. The umbrella policy is the Common Crop Insurance Policy ("Basic Provisions" or "CCIP"), provides general terms and conditions applicable to most agricultural commodities. *See* 7 C.F.R. § 457.8. The second component of an MPCI policy is the "crop provisions" that establish the insuring conditions by crop. The Tobacco Crop Insurance Provisions, which contain the conditions applicable to flue-cured tobacco, is also a federal regulation. *Id.* at § 457.136. The final elements of the MPCI policy are the actuarial documents, including the Special Provisions of Insurance ("SPOI"), that provide additional terms, conditions and exclusions by state, county, crop, practice, and plan of insurance. In addition, the Basic Provisions' definition of "policy" incorporates by reference "all regulations published in 7

2

C.F.R. Chapter IV." The Basic Provisions is "reinsured by the [FCIC] under the provisions of the Act," and "all provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act." *Id*. at § 457.8 (Preamble). Furthermore, the terms and conditions of Basic Provisions "may not be waived or varied in any way by the crop insurance agent or any other agent or employee of FCIC or the company." *Id.*

The Risk Management Agency[1] issues the procedures and standards applicable to the crop insurance program, including handbooks and interpretative guidance referred to as a Final Agency Determination ("FAD").[2] In this regard, the policy's Preamble states:

> We will use the procedures (handbooks, manuals, memoranda and bulletins), as issued by the FCIC and published on the RMA website . . . in the administration of this policy, including the adjustment of any loss or claim submitted hereunder.

Thus, the Basic Provisions incorporates by reference all procedures published by RMA and informs the policyholder that the AIP will apply those procedures in the servicing of the insurance policy and the adjusting of any claim for loss. In sum, FCIC and RMA control all aspects of the program, and each term of a federally reinsured crop insurance policy is a matter of substantive federal law.

    **B.**    <u>**The Governing Legal Principles**</u>.

FCIC has observed that the crop insurance "provisions have the force and effect of law." 56 Fed. Reg. 1345, 1348 (Jan. 14, 1991). Accordingly, an insured has an obligation to read and comply with the terms of the crop insurance policy. In the seminal case of *Federal Crop Insurance*

---

[1] RMA supervises FCIC and has authority over the delivery of all programs authorized by the Act. 7 U.S.C. § 6933(b). RMA provides the personnel and other support to implement and carry out the policies and procedures of the FCIC. Although FCIC and RMA are legally distinct agencies, they operate as one entity. The terms "FCIC" and "RMA" may be used interchangeably throughout the remainder of this Memorandum.

[2] Section 506(r) of the Act, 7 U.S.C. § 1506(r), and 7 C.F.R. part 400 subpart X authorize FCIC to interpret policy provisions upon written request. In accordance with sec. 20(a)(1)(i) of the Basic Provisions, these interpretations are binding in arbitration.

3

*Corporation vs. Merrill*, 332 U.S. 380 (1947), the Supreme Court stated: "Inevitably "the terms and conditions" upon which valid governmental insurance can be had must be defined by the agency acting for the Government . . . Accordingly, the [insurance policy was] binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the [the policy] or of the hardship resulting from innocent ignorance." *Id.* at 383 (citations omitted). *See also Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir. 2000) *citing Merrill* (federal law mandates strict compliance with terms of a federal insurance policy). Although "the imputation of knowledge" based on the publication of a statute or a regulation "is something of a fiction" it is a fiction "required in any system of law . . ." *United States v. R.L.C.*, 503 U.S. 291, 308 (1992). In short, Cook is deemed to have knowledge of all terms and conditions of the MPCI Policy.

*Merrill* predates the involvement of private insurance companies in the delivery of the Federal crop insurance, but its pronouncements apply equally to the modern crop insurance program. *See Nobles v. Rural Community Insurance Services*, 303 F. Supp.2d 1292, 1303 (M.D. Ala. 2004)(insured is charged with notice of insurance provisions published in the Federal Register); *Nobles v. Rural Community Insurance Services*, 122 F. Supp.2d 1290, 1300 (M.D. Ala. 2000)(acknowledging that *Merrill's* "holding has been extended to charge farmers with notice of the same provisions in FCIC-reinsured policies sold by private insurance corporations"); *Walpole v. Great American Ins. Cos.*, 914 F. Supp. 1283, 1291 n.12 (D.S.C. 1994) (holding that *Merrill* is "equally applicable to FCIC reinsured policies").

**III.  STATEMENT OF UNDISPUTED FACTS.**

On April 17, 2023, Cook and FMH a final hearing was held before M. Keith Kapp, Esquire and in accordance with the Commercial Rules of the American Arbitration Association. As

evidenced by the Demand For Arbitration (Ex. 1) and Amended Demand for Arbitration (Ex. 2), the arbitration arose from the same nexus of facts on which the Complaint is predicated. The Award of Arbitrator (Ex. 3) denied Cook's claims against FMH and, in doing so, made the following facts and conclusions of law, which are binding on the Cook:

1. Roy Cook ("Claimant") is a citizen of North Carolina and resident of Guilford County, North Carolina who runs a farm in Guilford County where tobacco crops are grown.

2. Farmers Mutual Hail Insurance Company of Iowa ("Respondent") is an Approved Insurance Provider ("AIP") within the meaning of the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.* (the "Act"). It sells and services federally reinsured Multiple Peril Crop Insurance ("MPCI") pursuant to the Act, the regulations promulgated by the Federal Crop Insurance Corporation ("FCIC"), which is a wholly owned government corporation and an agency within the United States Department of Agriculture ("USDA").

3. During crop year 2021, Claimant engaged Town and Country ("T&C") as agent and underwriter of Respondent to procure crop insurance for the 2021 tobacco crop which was done through MPCI on a CCIP.

4. On or about 10 March 2021, Claimant contracted non-party Old Belt Tobacco Sales, LLC ("OBTS") for the exclusive sale of Claimant's tobacco crops ("the Sale Contract"). However, either Claimant or OBTS could withdraw from the Sale Contract.

5. The Risk Management Agency ("RMA") is an agency within USDA which supervises FCIC and has authority over the delivery of all programs authorized by the Act.

6. On November 30, 2020, RMA issued the Special Provisions of Insurance ("SPOI") in effect for the 2021 crop year which were applicable to flue-cured tobacco in Guilford County. The SPOI provided that contracted tobacco is eligible to be insured at the

"contracted tobacco price" which was set at $1.80. The SPOI defines "contracted tobacco" to mean "[t]obacco produced under a valid production agreement . . ." The SPOI defined "production agreement" to mean: "A written agreement between you and a processor, containing at a minimum:"

1. The producer's commitment to produce tobacco on your farm operation during the insurance period and deliver production to the processor;
2. The processor's commitment to purchase the tobacco stated in the contract; and
3. The total number of pounds to be delivered.

The SPOI defined "processor" to mean:

> Any business enterprise which is regularly engaged in purchasing tobacco for processing or manufacturing of tobacco products. The enterprise must possess all required state and federal licenses and permits for processing or manufacturing tobacco products. The entity must also own facilities, or have contractual access to such facilities, with enough equipment to accept and process the contracted tobacco within a reasonable amount of time after harvest as of the date the contract is issued.

7. On or about 11 June 2021, Claimant signed an Acreage Report and an agent employed through T&C keyed Claimant's Acreage Report into Respondent's system on 12 August 2021 and also provided Respondent with the TP Agreement.

8. On or about 17 August 2021, Respondent issued a Summary of Coverage reporting a price of $0.90, which is the established price set by the actuarial documents issued by RMA. On or about 25 August 2021, Respondent issued a Summary of Coverage that reported a price of $1.80, which is the maximum price as opposed to the established price. The Sale Contract was the basis for the higher price stated in the 25 August 2021 Summary of Coverage.

9. On or about 5 November 2021, Claimant submitted a Notice of Loss for drought that occurred in August 2021. David Shore ("Shore") was assigned by Respondent to adjust Claimant's claim. Shore's supervisor alerted him to a concern as to the validity of the Sales Contract. Shore adjusted Claimant's loss under a Non-Waiver Agreement.

10. After reviewing the requirements of the SPOI, Respondent decided the Sale Contract did not satisfy the SPOI's definition of "production agreement." Respondent determined the Sale Contract was not a valid production agreement because OBTS was not a "processor," and the Sale Contract does not contain an unrestricted commitment by OBTS to purchase Claimant's tobacco. Respondent determined that Claimant was not entitled to the maximum over established price of $1.80 per pound. Respondent adjusted Claimant's coverage based on a price reduction from $1.80 to $0.90 per pound and paid that amount to Claimant. Respondent paid Claimant a 2021 crop year indemnity based on the lesser price of $0.90 per pound.

11. The Sale Contract is, by its terms, a marketing agreement under which OBTS acts as Claimant's exclusive sales agent. The Sale Contract does not require OBTS to purchase Claimant's tobacco. The Sale Contract does not create an obligation that restricts the freedom of OBTS, because it could withdraw Claimant's tobacco from the OBTS Program for any reason and at any time prior to sale.

12. Respondent was required by the CCIP, the applicable SPOI and legal precedent to reduce the price at which Claimant obtained coverage from $1.80 per pound to $0.90 per pound.

13. Claimant's claims against Respondent relative to his 2021 flue-cured tobacco policy and claim are denied because the Sale Contract did not meet the SPOI production agreement requirement for sales.

## IV. FEDERAL CROP INSURANCE ACT AND FCIC REGULATIONS PREEMPT INCONSISTENT STATE LAW.

Having lost the arbitration, Cook now seeks to nullify the Award of Arbitrator by pursuing litigation that involves the same facts and legal principles that were adjudicated in the arbitration. However, the Complaint must be dismissed, because Cook's causes of action are preempted by federal law, and he has not complied with the regulatory requirements for pursuing state law claims and recovering extra-contractual damages.

Congress has specifically provided for the preemption of state regulation of the federal crop insurance program:

> State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.

7 U.S.C. § 1506(l).[3] This provision authorizes the FCIC "to issue regulations and contracts that generally preempt the application of state law to the crop insurance industry." 55 Fed. Reg. at 23068. Indeed, in enacting section 1506(l),

> Congress has unambiguously expressed its intent to confer the FCIC with the authority to preempt all state and local laws which apply to the FCIC's contracts and the parties to those contracts. The FCIC's reinsurance agreements is a contract necessary to the FCIC's business.

---

[3]Section 1506(l) was initially codified as 7 U.S.C. § 1506(k).

Case 1:23-cv-00817-LPA   Document 7   Filed 10/04/23   Page 8 of 16

*State of Kansas ex rel. Todd v. U.S.*, 791 F. Supp. 1491, 1496 (D. Kan. 1992) (underscoring in original). To this end, the preemptive effect of the Act applies equally to FCIC and to the companies that comprise the "private section insurance delivery system." *Id.* at 1497.

FCIC has promulgated regulations implementing the Act's preemption of state law. *See* 7 C.F.R. part 400 subpart P ("Subpart P"). These preemption regulations are broad in scope and provide:

> No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions **that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part** unless such authority is specifically authorized by this part or by the Corporation.

7 C.F.R. § 400.352(a) (emphasis added). In enacting Subpart P, FCIC explained that section 1506(1) "must be interpreted to include the preemption of state rules that only apply to contractors." 55 Fed. Reg. at 23066, 23068 (June 6, 1990). Therefore, state statutes that govern the conduct of private insurance companies, such as FMH, are preempted to the same extent as state statutes that impact FCIC.

In publishing Subpart P, the FCIC explained, "[t]he procedures, rules, and terms of [federal crop] insurance are to be established by FCIC." 55 Fed. Reg. at 23067. As FCIC emphasized, the terms and conditions of federal crop insurance "cannot be enforced in a patchwork pattern." *Id.* The Final Rule also summarized the rationale for and scope of Subpart P:

> in order to carry out its Congressional mandate to establish crop insurance uniformly throughout the United States, FCIC has to have the authority to control not only the contractual relationship with its contractors, but it also must control the relationship such contractors have with insureds. Many provisions of the agreements FCIC executes with contractors regulate contractual terms and conditions between the contractor and insureds. Thus, 7 U.S.C. 1506(k) must be interpreted to include the preemption of state rules that only apply to contractor . . .

9

*Id.* at 23067-68. As the above-quoted provision demonstrates, the Act's preemptive power governs both the contract between FCIC and FMH and the contract between FMH and Cook. Hence, the determination of liability with respect to the sale, issuance, or service of a federal crop insurance policy is governed exclusively by the Act and its attendant regulations, and the policies and procedures of the FCIC. Otherwise, the FCIC would not be able "to carry out its Congressional mandate to establish crop insurance uniformly throughout the United States." *Id.* at 23067-68. Hence, the determination of liability with respect to the sale, issuance, or service of a federal crop insurance policy is governed exclusively by the Act and the established rules, regulations, policies, and procedures of the FCIC.

Like Subpart P, the Basic Provisions incorporates the principle of federal preemption set forth in section 1506(l). Section 20(f) provides:

> In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CDR chapter IV, including the provisions of 7 CFR part 400 subpart P, are binding. **Conflicts between this policy and any state or local laws will be resolved in accordance with section 31. If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control**.

(Emphasis added). To this end, section 31, captioned "Applicability of State and Local Statutes," provides that the provisions of the Basic Provisions prevail over conflicting state or local statutes and "state and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy." 7 C.F.R. § 457.8 sec. 31.

In sum and as succinctly stated by the United States Court of Appeals for the Fourth Circuit, "the weight of recent authority recognize[es] that claims arising from an insurer's determination under the policy are preempted." *J.O.C. Farms, L.L.C. v. Fireman's Fund Ins. Co.*, 737 Fed. Appx. 652, 656 (4th Cir. 2018).

## V. FCIC REGULATIONS PREEMPT STATE LAW CLAIMS FOR EXTRA-CONTRACTUAL DAMAGES.

As previously noted, section 1506(l) of the Act expressly preempts inconsistent state laws. In addition, FCIC has, pursuant to its authority under section 1506(l), promulgated regulations that preempt state laws that provide for the award of extra-contractual damages, including punitive damages and attorney's fees. Subpart P specifically preempts the recovery of extra-contractual damages against companies selling and servicing federal crop insurance policies and states:

> (b) The following is a non-inclusive list of examples of **actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part**. Such entities **may not**:
>
> \*       \*       \*
>
> (4) **Levy** fines, judgments, **punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors**, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company **if a determination is obtained from FCIC that the company, its employees, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC** and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled).

7 C.F.R. C.F.R. § 400.352(b) (Emphasis added). FCIC explained its decision to restrict a policyholder's right to attorney's fees and punitive damages:

> FCIC agrees that insurance providers may have been at risk for punitive or extra contractual damages . . . even though they may not have violated FCIC's policies or procedures. This risk poses a considerable program integrity issue . . . and could result in increased costs to taxpayers. Therefore, FCIC has revised section 20 and made conforming amendments to 7 CFR 400.176(b) and 400.352(b)(4), *to limit the imposition of punitive and other extra contractual damages, attorneys fees and other costs to those situations where FCIC has determined the insurance provider violated its policies and procedures* . . . FCIC will be making the determinations because . . . FCIC is in the best position to

> know whether an action constitutes a violation and to ensure the uniform application of the policies and procedures.

69 Fed. Reg. 48652, 48717 (Aug. 10, 2004) (emphasis added). FCIC's comments demonstrate that the limitations imposed by the Basic Provisions apply to all claims for attorney's fees and extra contractual damages, including damages based on state statutes, both of which FCIC considers to be a threat to program integrity. Although FCIC recognized that there might be "circumstances that are so egregious that such damages are warranted," FCIC alone has the authority to determine whether a policyholder may initiate a legal action seeking to recover extra-contractual damages and attorney's fees.

These regulations are clear and unambiguous. *See Zych v. Haugen*, 2017 Minn. App. Unpub. LEXIS 645 *10. Section 400.352(b)(4) both preempts the North Carolina statutes on which Cook has predicated his claim for compensatory and statutory damages and costs *unless* Plaintiff obtains a determination from FCIC that FMH failed to comply with FCIC policy or procedures. To date, Cook has neither requested nor received such a determination from FCIC.

FCIC has issued guidance interpreting the above-quoted regulations. In FAD-240, which addressed section 7 U.S.C. § 400.176(b), FCIC stated:

> **Any claim, including a claim for extra-contractual damages** solely arising from a condition related to policies of insurance issued pursuant to the Federal Crop Insurance Act (Act), **may only be awarded if** a determination is obtained from FCIC . . .
>
> FCIC also agrees that **7 CFR § 400.176(b) . . . preempts any state law claims that are in conflict**. That means that **to the extent that State law would allow a claim for extra-contractual damages, such State law is pre-empted** and extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.
>
> **To the extent that State courts have awarded extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with the law**.

(Emphasis added). FAD-251 reinforces the preemptive effect of FCIC's regulation and states:

> As previously provided in FAD-240, **FCIC also agrees that 7 C.F.R. § 400.352 pre-empts any State law that would allow a claim for extra-contractual damages that conflicts with the provision** in section 400.352 that **any extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent, or loss adjuster failed to comply with the terms of the policy or procedures** issued by FCIC. To the extent that State courts award extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with 7 C.F.R. § 400.352 and FCIC regulations.

(Emphasis added). Each FAD notes that, in accordance with 7 C.F.R. § 400.765(c), it "is binding on all participants in the Federal crop insurance program," and this includes Cook.

Although the Act does not completely preempt all state law claims against an insurance company, FCIC's regulations impose barriers to the recovery of extra-contractual damages. *See Farm Mgmt. Co. v. Rural Comm. Ins. Serv.*, 2015 U.S. Dist. LEXIS 54754 *21 (E.D. Wash. 2015). In *Farm Management*, Farm Management Company ("FMC") alleged that RCIS failed to conduct an indemnity inspection or make a farm visit in order to verify the causes of loss and had denied all claims on certain properties without following the loss adjustment procedures established by the FCIC. Based on these allegations, FMC pursued state-law claims for bad faith, negligence, and violation of the Washington Consumer Protection Act ("WPCA"). In rejecting FMC's claims for extra-contractual damages, the Court concluded the WPCA conflicted with federal law and was preempted. More specifically, the Court stated, "permitting FMC to pursue state-law bad faith, negligence, and WPCA claims pertaining to RCIS's claims-handling and denial of indemnity would interfere with the FCIA and its CCIP." *Id.* at *24.

Similarly, the Tennessee Court of Appeals held that the insured's claims for breach of contract, breach of the duty of care, and statutory bad faith for refusal to pay the loss were preempted because "they pertain to actions or inactions 'required or authorized' under the Act, federal regulations, or the policy provisions." *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 561 **15-16 (Tenn. Ct. App. Aug. 13, 2012). In the instant case, Cook' allegations

13

against FMH relate to actions that were "required or authorized" by the Act, and are likewise preempted by the Act, FCIC's regulations and the Basic Provisions.

The crop insurance policy's limitation on extra-contractual damages mirrors Subpart P, and Cook has not met the policy's conditions precedent to the recovery of such amounts. More specifically, section 20(i) of the Basic Provisions specifically addresses the awarding of attorney's fees and other damages, stating:

> In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us ***only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled***. Requests for such a determination should be addressed to the following: USDA/RMA/Deputy Administrator of Compliance . . .

Again, before recouping fees and damages, Mr. Cook must first obtain the above-highlighted determination from RMA's Deputy Administrator of Compliance. Mr. Cook has not satisfied this threshold requirement.

## VI. CONCLUSION.

In sum, the Complaint seeks both compensatory damages based on alleged misrepresentations by FMH and damages under North Carolina statute. However, as explained above, FCIC's regulations impose strict limitations on Cook's entitlement to these damages. Because Cook has not complied with the requirements of section 400.352(b)(4) and section 20(i) of the Basic Provisions, its complaint must be dismissed.

RESPECTFULLY SUBMITTED, this the 4th day of October 2023.

      /s/ Joseph L. Bell, Jr.
Joseph L. Bell, Jr.
N.C. State Bar No. 18082
*Attorney for Defendant Farmers Mutual Hail Insurance Company of Iowa*

Of Counsel:

BATTS, BATTS & BELL, LLP
Post Office Drawer 8228
Rocky Mount, North Carolina  27804-1228
Voice: (252) 977-6450
FAX:  (252) 972-7500
Email:  jbelljr@battslaw.com

CASE NO. 1:23-CV-00817

CERTIFICATE REGARDING SERVICE

    I hereby certify that on the 4th day of October 2023, I served a filed-stamped copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM on the attorneys for Plaintiff via facsimile to (919) 934-9536 and by depositing same in the United States Mail, first class postage prepaid, in an envelope addressed to said attorneys for Plaintiff at the following address:

Luther D. Starling, Jr., Esq.
Edmond D. Haney, Esq.
DAUGHTRY, WOODARD, LAWRENCE & STARLING
405 E. Market St.
Smithfield, NC 27577
Voice: (919) 300-6982
FAX: (919) 934-9536
Email: Lewstarling@dwlslaw.com
       Edmondhaney@dwlslaw.com
*Attorneys for Plaintiff Roy Cook*

    This the 4th day of October 2023.

                                                          /s/ Joseph L. Bell, Jr.
                                        Joseph L. Bell, Jr.
                                        N.C. State Bar No. 18082
                                        BATTS, BATTS & BELL, LLP
                                        Post Office Drawer 8228
                                        Rocky Mount, North Carolina 27804-1228
                                        Voice: (252) 977-6450
                                        FAX: (252) 972-7500
                                        Email: jbelljr@battslaw.com
                                        *Attorney for Defendant Farmers Mutual Hail Insurance Company of Iowa*