AMERICAN ARBITRATION ASSOCIATION®  INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION℠

# AWARD OF ARBITRATOR
# COMMERCIAL ARBITRATION TRIBUNAL

Case Number: 01-22-0001-6426

Roy Cook, ("Claimant")
-vs-
Farmers Mutual Hail Insurance Company of Iowa, ("Respondent")

(Collectively "the Parties")

I, M. Keith Kapp, the undersigned Arbitrator, having been designated in accordance with the Arbitration Agreement in paragraph 20 of the Common Crop Insurance Policy ("CCIP") between Claimant, who was represented by Edmond D. Haney of Daughtry, Woodard, Lawrence & Starling, and Respondent, who was represented by Daniel N. Rosenstein of Levin & Rosenstein, P.C., and pursuant to the 23 June 2022 Notice of Appointment of the American Arbitration Association ("AAA") and having been duly sworn and duly heard the proofs, allegations, and arguments of the Parties, pursuant to the Commercial Arbitration Rules of the AAA and pursuant to the statutes, rules, and regulations under the Federal Crop Insurance Program ("FCIP") applicable to the CCIP, do hereby find and conclude as follows:

## A. FINDINGS OF FACT:

1. Roy Cook ("Claimant") is a citizen and resident of Guilford County, North Carolina, who runs a farm in Guilford County, North Carolina where tobacco crops are grown.

2. Farmers Mutual Hail Insurance Company of Iowa ("Respondent") is an Approved Insurance Provider ("AIP") within the meaning of the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.* (the "Act"). It sells and services federally reinsured Multiple Peril Crop Insurance ("MPCI") pursuant to the Act and the regulations promulgated thereunder by the Federal Crop Insurance Corporation ("FCIC"), which is a wholly-owned government corporation and an agency within the United States Department of Agriculture ("USDA").

3. During crop year 2021, Claimant engaged Town and Country Insurance Company ("T&C") as agent and underwriter of Respondent to procure crop insurance for the 2021 tobacco crop which was done through MPCI on a CCIP.

4. On or about 10 March 2021, Claimant contracted with non-party Old Belt Tobacco Sales, LLC ("OBTS") for the exclusive sale of Claimant's 2021 tobacco crops ("the Sale Contract"). However, either Claimant or OBTS could withdraw from the Sale Contract.

5. On or about 22 February 2021, OBTS entered into a Tobacco Processing Agreement ("TP Agreement") with Alliance One North America, LLC ("AONA").

6. Pursuant to the TP Agreement, AONA was to provide to OBTS certain receiving, handling, processing, and packaging services, with respect to OBTS's 2021 U.S. flue-cured tobacco crop.

02746863.1

**EXHIBIT 3**

7. The Risk Management Agency ("RMA") is an agency within USDA which supervises FCIC and has authority over the delivery of all programs authorized by the Act.

8. On 30 November 2020, RMA issued the Special Provisions of Insurance ("SPOI") in effect for the 2021 crop year which were applicable to flue-cured tobacco in Guilford County, North Carolina. The SPOI provided that contracted tobacco is eligible to be insured at the "contracted tobacco price" which was set at $1.80. The SPOI defined contracted tobacco to mean: "tobacco produced under a valid production agreement . . . ." The SPOI defined "production agreement" to mean: "A written agreement between you [the producer] and a processor, containing at a minimum:"

 1. The producer's commitment to produce tobacco on the producer's farm operation during the insurance period and deliver production to the processor;

 2. The processor's commitment to purchase the tobacco stated in the sale contract; and

 3. The total number of pounds of tobacco to be delivered.

The SPOI defined "processor" to mean:

> Any business enterprise which is regularly engaged in purchasing tobacco for processing or manufacturing of tobacco products. The enterprise must possess all required state and federal licenses and permits for processing or manufacturing tobacco products. The entity must also own facilities, or have contractual access to such facilities, with enough equipment to accept and process the contracted tobacco within a reasonable amount of time after harvest as of the date the contract is issued.

9. On or about 11 June 2021, Claimant signed an Acreage Report and an agent employed through T&C keyed Claimant's Acreage Report into Respondent's system on 12 August 2021 and also provided Respondent with the TP Agreement.

10. On or about 17 August 2021, Respondent issued a Summary of Coverage reporting a price of $0.90, which is the established price set by the actuarial documents issued by RMA. On or about 25 August 2021, Respondent issued a Summary of Coverage that reported a price of $1.80, which is the maximum price as opposed to the established price. The Sale Contract was the basis for the higher price stated in the 25 August 2021 Summary of Coverage.

11. On or about 5 November 2021, Claimant submitted a Notice of Loss for drought that occurred in August 2021. David Shore ("Shore") was assigned by Respondent to adjust Claimant's claim. Shore's supervisor alerted him to a concern as to the validity of the Sale Contract. Shore adjusted Claimant's loss under a Non-Waiver Agreement.

12. After reviewing the requirements of the SPOI, Respondent decided the Sale Contract did not satisfy the SPOI's definition of "production agreement." Respondent determined the Sale Contract was not a valid production agreement because OBTS was not a "processor," and the Sale Contract does not contain an unrestricted commitment by OBTS to purchase Claimant's tobacco. Respondent determined that Claimant was not entitled to the maximum over established price of $1.80 per pound. Respondent adjusted Claimant's coverage based on a price reduction from $1.80 to $0.90 per pound and paid that amount to Claimant. Respondent paid Claimant a 2021 crop year indemnity based on the

102746863.1

Case 1:23-cv-00817-LPA   Document 7-3   Filed 10/04/23   Page 2 of 4

lesser price of $0.90 per pound.

13. It wasn't until 8 March 2022, some months following the payment period, that Claimant received a letter from Respondent explaining the reasoning for lowering his coverage amount.

## B. CONCLUSIONS OF LAW:

1. Claimant has the burden of proof in this Arbitration per Section 14(e)(4)(iii) of the Act.

2. The CCIP is a federal regulation published by FCIC that has the force and effect of law. 7 C.F.R. § 457.8.

3. The terms and conditions of federal crop insurance are defined by FCIC and RMA, which are the agencies acting for the Federal Government. *Federal Crop Insurance Corporation v. Merrill, 332 U.S. 380, 383 (1947)*. Respondent operates "not as a purely private insurance company, but as a fiscal agent of the United States, [so] this case is governed to some extent by rules quite different from those that would apply in a normal insurance dispute." *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir. 2001).

4. The Arbitrator does not have "the power to waive or expand the terms of a federally reinsured crop insurance policy." *Great Amer. Ins. Co. v. Mills*, 2008 U.S. Dist. LEXIS 42570 *20 (D.S.C. 2008). Nor does the Arbitrator have the authority to modify, waive or change any of the applicable SPOI provisions set by RMA.

5. Estoppel is not applicable to CCIP. The terms and conditions of a federal reinsurance policy must be strictly complied with and enforced. *William J. Mouren Farming, Inc. v. Great Amer. Ins. Co.*, 2005 U.S. Dist. LEXIS 43772 *29 (E.D. Cal. 2005).

6. Private insurance companies like Respondent are protected by the prohibition against estoppel that applies to the Federal Government. *Cain Field Nursery v. Farmers Crop Ins. Alliance, Inc.*, 2012, U.S. Dist. LEXIS 53930 *36 (E.D. Tenn. 13 April 2012).

7. The Sale Contract is, by its terms, a marketing agreement under which OBTS acts as Claimant's exclusive sales agent. The Sale Contract does not require OBTS to purchase Claimant's tobacco. The Sale Contract does not create an obligation that restricts the freedom of OBTS, because it could withdraw Claimant's tobacco from the OBTS Program for any reason and at any time prior to sale.

8. Respondent was required by the CCIP, the applicable SPOI and legal precedent to reduce the price at which Claimant obtained coverage from $1.80 per pound to $0.90 per pound.

9. Claimant's claims against Respondent relative to his 2021 flue-cured tobacco policy and claim are denied because the Sale Contract did not meet the SPOI production agreement requirement for sales.

## C. AWARD:

Accordingly, I AWARD as follows:

1. Claimant shall recover nothing from Respondent.

2. The administrative filing fees of AAA totaling $1,725.00, originally incurred by Claimant,

102746863.1

shall be borne by Claimant, per this Award. The fees of the Arbitrator totaling $13,710.00 originally incurred equally by the Parties shall be borne equally by the Parties. An attorney fee award is not allowed at this stage of the dispute per the CCIP, Sections 20(h) and (i)

    3.    The above costs are to be paid on or before 30 days of the Award.

    4.    This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby DENIED.

    5.    In making these findings and rulings on liability of Respondent to Claimant, the Arbitrator makes no findings of fact or conclusions of law as to the liability of non-parties OBTS and AONA to Claimant, including misrepresentations by OBTS and AONA and third-party beneficiary liability.

    6.    In making these findings and rulings on the liability of Respondent to Claimant, the Arbitrator makes no findings of fact or conclusions of law as to the liability of non-party T&C to Claimant, including any agent liability.

I, M. Keith Kapp, do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

**SO ORDERED:**

_7 June 2023_
Date

_M. Keith Kapp_
M. Keith Kapp, Arbitrator