# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROY COOK,                        )
                                 )
              Plaintiff,         )
                                 )
         v.                      )        1:23cv817
                                 )
FARMERS MUTUAL HAIL INSURANCE     )
COMPANY OF IOWA,                 )
                                 )
              Defendant.         )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Defendant's Motion to Dismiss" (Docket Entry 6) (the "Motion").[1]  For the reasons that follow, the Court will grant the Motion as specified herein.[2]

## BACKGROUND

Alleging that Farmers Mutual Hail Insurance Company of Iowa (the "Defendant" or "FMH") engaged in unfair and deceptive trade practices and negligent misrepresentation regarding his 2021 crop insurance, Roy Cook (the "Plaintiff") sued Defendant, seeking "actual damages . . ., plus treble damages . . . and attorneys' fees" (Docket Entry 5 (the "Complaint"), ¶ 29).  (See generally

_____

1 For legibility reasons, this Opinion omits all-cap, bold, and underlined font in all quotations from the parties' materials.

2 Pursuant to the parties' consent, Chief United States District Judge Catherine C. Eagles referred this case to the undersigned United States Magistrate Judge for all proceedings. (See Docket Entry 15 at 1.)  [Docket Entry page citations utilize the CM/ECF footer's pagination.]

Docket Entry 5.)[3]  As exhibits to the Complaint, Plaintiff attached a "Statement of Account" (Docket Entry 5-1 at 1) and associated "Summary of Coverage" (Docket Entry 5-2 at 1) for his insurance policy.  According to the Complaint:

"Plaintiff operates a farm in Guilford County, North Carolina where they grow *inter alia* tobacco crops." (Docket Entry 5, ¶ 7.) "As is their normal course of business, during crop year 2021, Plaintiff engaged with Town and Country Insurance Company (hereinafter 'T&C') as an agent/underwriter of FMH to procure crop insurance for their 2021 Tobacco crop." (Id., ¶ 8.) "In or about March 2021, Plaintiff contracted with non-party Old Belt Tobacco Sales, LLC [('OBTS')] for the sale of their 2021 Tobacco crops ('the Sales Contract')." (Id., ¶ 9.) "In or about March 2021, Plaintiff contracted with FMH for crop insurance to cover the 2021 Tobacco crop ('the Policy')." (Id., ¶ 10.) "T&C was provided with copies of the Sale Contract as part of procuring the Policy and forwarded the Sales Contract to . . . FMH, which was accepted by . . . FMH." (Id., ¶ 11.) "On or about May 20, 2021, . . . FMH's employee . . . visited High Rock Farms for a spot check to ensure all tobacco farms were compliant with farming practices." (Id., ¶ 12.) "In or about June 2021, Plaintiff provided to Defendant crop reports for the 2021 crop year." (Id., ¶ 13.) "Upon

_____

    3 Plaintiff initiated suit in North Carolina state court, but Defendant removed the action to this Court on the basis of diversity jurisdiction. (See, e.g., Docket Entry 1 at 1-2.)

2

Defendant's acceptance of the Sales Contract and the crop reports, Plaintiff began planting flue-cured tobacco in June, 2021." (Id., ¶ 14.)

"Due to natural conditions, the 2021 crop year resulted in a loss for Plaintiff to which the Policy was applicable." (Id., ¶ 15.) "On or about August 5, 2021, Plaintiff made a claim for loss to Defendant . . . ." (Id., ¶ 16.) "On or about August 24, 2021, Plaintiff received a Statement of Account that states [Plaintiff] owed FMH the premium for $1.80 coverage in the amount of $56,191.00." (Id., ¶ 17 (citing "exhibit A").) "On or about August 25, 2021, Plaintiff received a 'Summary of Coverage' indicating that their respective tobacco crops were insured at the rate of $1.80 per pound under the Policy." (Id., ¶ 18 (citing "exhibit B").) "On or about December 19, 2021, Plaintiff was advised that payment under the Policy had been reduced to $0.90 per pound." (Id., ¶ 19.) "On or about January 13, 2022, Plaintiff received a revised 'Summary of Coverage' showing the coverage level had been reduced to $0.90 per pound." (Id., ¶ 20.) "On or about January 17, 2022, Plaintiff received a revised premium letter which included interest and late fees based on a premium coverage level of $1.80 per pound, not the $0.90 per pound." (Id., ¶ 21.) "As a result of the change in coverage level, Plaintiff was subjected to substantial hardship." (Id., ¶ 22.) "Plaintiff detrimentally relied upon [FMH's] conduct in planting and cultivating the 2021

3

tobacco crop." (Id., ¶ 23.) "As a result of [FMH's] conduct, Plaintiff has suffered damages . . . ." (Id., ¶ 24.)

"Defendant's conduct amounts to an unfair and deceptive trade practice in violation of Chapter 75 of the North Carolina General Statutes." (Id., ¶ 26.) "Defendant's conduct is in and affecting commerce." (Id., ¶ 27.) "As a direct, actual and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be determined at trial but in excess of $25,000.00." (Id., ¶ 28.) "Plaintiff is entitled to recover actual damages from Defendant . . . , plus treble damages . . . and attorneys' fees and costs" under certain North Carolina statutes. (Id., ¶ 29.)

Additionally, "[a]s set forth above, Defendant had a duty to exercise reasonable care or competence in obtaining or communicating information to Plaintiff concerning the Policy." (Id., ¶ 31.) "In the regular course of business, Defendant supplied information to Plaintiff and/or Plaintiff's agent and intended for Plaintiff to rely on that information for its [sic] farming operations during the 2021 crop year, including the guidance or benefit of obtaining crop insurance." (Id., ¶ 32.) "Defendant made material misrepresentations or failed to exercise reasonable care when they [sic] made material misrepresentations." (Id., ¶ 33.) "Defendant failed to exercise reasonable care or competence in obtaining or communicating the acceptance of the OBTS Agreement [sic]." (Id., ¶ 34.) "Plaintiff actually relied on

4

[FMH's] conduct and Plaintiff's reliance was reasonable and justifiable." (Id., ¶ 35.) "Plaintiff did not know that the OBTS contract [sic] would be rejected and he would only be insured for the non-contract price." (Id., ¶ 36.) "As a sole and proximate cause [sic] of Defendant['s] negligent misrepresentations, . . . Plaintiff has suffered damages . . . ." (Id., ¶ 37.)

Defendant moved to dismiss the "Complaint for failure to state a claim upon which relief can be granted." (Docket Entry 6 at 1.)[4] In particular, Defendant maintains that

> the Complaint seeks both compensatory damages based on alleged misrepresentations by FMH and damages under North Carolina statute. However, . . . [federal] regulations impose strict limitations on [Plaintiff's] entitlement to these damages. Because [Plaintiff] has not complied with the requirements of section 400.352(b)(4) and [Paragraph] 20(i) of the Basic Provisions, [the C]omplaint must be dismissed.

(Docket Entry 7 at 14.) Plaintiff opposes the Motion (see Docket Entry 9 at 1-18), urging the Court to deny it on the grounds that:

> (1) [Plaintiff] complied with the [relevant federal] regulations by submitting his breach of contract claim against FMH to arbitration; (2) [Plaintiff's] state laws claims are not preempted because they do not conflict with the policy or [federal] regulations; and

---

4    Defendant erroneously moved to dismiss the Complaint "pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure." (Id. at 1; see id. (bearing caption "N.C.G.S. § 1A-1, Rule 12(b)(6)"); see also Docket Entry 7 at 1-2 (relying entirely on North Carolina court decisions for applicable "Standard of Review" for "'motion[s] to dismiss under Rule 12(b)(6)'").) The Federal Rules of Civil Procedure, not the North Carolina Rules of Civil Procedure, govern proceedings in this Court.

(3) [federal] regulations do not preempt state law tort claims for extra-contractual damages.

(Id. at 18.)

## DISCUSSION

### I. Relevant Standards

### A. Motions to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a Rule 12(b)(6) motion, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual

6

content to support a reasonable inference of the defendant's liability for the alleged misconduct. See id. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" cannot "survive a Rule 12(b)(6) motion." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

Moreover, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont, 637 F.3d at 448. The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Generally, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment," an action from which courts should refrain "where the parties have not had an opportunity for reasonable discovery." E.I. du Pont, 637 F.3d at 448. Nevertheless, in reviewing Rule 12(b)(6) motions, courts "may properly take judicial notice of matters of public record." Philips, 572 F.3d at 180.

7

## B. Federal Crop Insurance

This matter involves a "federal crop insurance polic[y], which [Defendant] sold pursuant to the Federal Crop Insurance Act ([the 'Act' or ]'FCIA'), 7 U.S.C. §§ 1501-1524, 1531, and accompanying regulations issued by the [Federal Crop Insurance Corporation (the 'FCIC')]," <u>Williamson Farm v. Diversified Crop Ins. Servs.</u>, 917 F.3d 247, 249 (4th Cir. 2019). (<u>See</u> Docket Entry 5, ¶¶ 8-11; <u>see also</u> Docket Entry 7 at 2 (asserting that "FMH is an Approved Insurance Provider ([at times, an ]'AIP'), which 'is a private insurance provider that has been approved by the FCIC to provide insurance coverage to producers participating in the Federal crop insurance program within the meaning of the Act,'" and that, "[f]or the 2021 crop year, [Plaintiff] was an FMH policyholder insuring flue-cured tobacco . . . under a federally reinsured [multi-peril crop insurance (an 'MPCI')] policy" (brackets omitted)); Docket Entry 9 at 1-2 (asserting that, "[i]n March of 2021, FMH (an approved insurance provider for the federal crop insurance program) issued tobacco crop insurance to [Plaintiff], for which he was to pay a premium for coverage at the rate of $1.80 per pound based on his contract with a third-party to purchase his tobacco," that FMH subsequently reduced Plaintiff's coverage because it "'determined' that [his] sales contract did not meet the conditions for issuing coverage at the rate of $1.80 per pound," and that Plaintiff "followed the federal crop insurance program's procedure and

8

submitted a breach of contract claim regarding this determination to arbitration").) "[Such] policies are not typical private insurance agreements, so a brief discussion of the federal government's role in crop insurance agreements is necessary." Williamson Farm, 917 F.3d at 249. In that regard:

> The federal crop insurance program provides farmers and agricultural entities in the United States with crop insurance protection, a venture that was considered too risky for traditional private insurers when the FCIA was enacted in 1938. As the Supreme Court explained, "the Government engaged in crop insurance as a pioneer. Private insurance companies apparently deemed all-risk crop insurance too great a commercial hazard." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383 (1947).

> To provide this protection to farmers, the FCIA established the FCIC, a government corporation within the United States Department of Agriculture's Risk Management Agency [(the "RMA")] that administers the federal crop insurance program. 7 U.S.C. § 1503. The FCIC does not directly issue crop insurance policies to farmers. Instead, it relies on "approved insurance providers" — private insurers such as [Defendant] — to issue federal crop insurance policies to farmers like [Plaintiff]. 7 U.S.C. § 1502(b)(2). Then, when certain eligibility conditions are met, the FCIC reinsures the approved insurance providers' losses and reimburses their administrative and operating costs.

> In order to qualify for reinsurance through the FCIC, approved insurance providers must comply with the FCIA and the accompanying regulations issued by the FCIC governing the sale, issuance, and servicing of federal crop insurance policies. 7 C.F.R. § 400.168; *see also Felder v. Fed. Crop Ins. Corp.*, 146 F.2d 638, 640 (4th Cir. 1944); *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014). Accordingly, "even though the crop insurance policy is between the farmer and an approved insurance provider," the FCIA "establishes the terms and conditions of insurance." *Davis*, 762 F.3d at 1284 (citation omitted).

9

Indeed, all approved insurance providers issue a uniform policy drafted by the FCIC known as the "Common Crop Insurance Policy," the text for which is provided at 7 C.F.R. § 457.8. . . . Additionally, the FCIC sets premium rates for each county and crop insured, subsidizes and receives premiums, and pays claims. In short, the FCIC is extensively involved in and exerts control over all aspects of the federal crop insurance program.

Williamson Farm, 917 F.3d at 249-50 (footnote and parallel citations omitted).

Thus, "in cases involving federally reinsured crop insurance, the insurance contract forms only one part of the agreement between the parties. The statutes and regulations associated with the federal crop insurance scheme also [govern] . . . ." Id. at 255 (brackets and internal quotation marks omitted); see also General Administrative Regulations, Catastrophic Risk Protection Endorsement; Group Risk Plan of Insurance Regulations for the 2004 and Succeeding Crop Years; and the Common Crop Insurance Regulations, Basic Provisions, 69 FR 48652-01, 48726 (Aug. 10, 2004) (the "FCIC Response to Comments") (explaining that "the Act, regulations and the policy have binding and preemptive effect"). In other words,

[b]ecause insurance policies issued by private insurers must comply with the FCIA and accompanying regulations to qualify for reinsurance through the FCIC, "the FCIA generally establishes the terms and conditions of insurance even though the crop insurance policy is between the farmer and an approved insurance provider." The terms and conditions of the MPCI policies are promulgated by the FCIC as regulations. . . . [T]he Common Crop Insurance Policy ([at times, the "Basic Provisions" or ]"CCIP"), codified at 7 C.F.R. § 457.8,

10

applies to policies insuring most crops. As the terms and conditions of the CCIP are promulgated in the Federal Register, they are "binding on all who s[eek] to come within the [FCIA], regardless of actual knowledge of what is in the Regulations or of the hardship resulting from ignorant innocence."

J.O.C. Farms, L.L.C. v. Fireman's Fund Ins. Co., 737 F. App'x 652, 654 (4th Cir. 2018) (certain brackets in original) (citations omitted) (first quoting Davis, 762 F.3d at 1284; then quoting Merrill, 332 U.S. at 385).

"The FCIC provides, as necessary, interpretations of the statute and regulations to interested parties. The FCIC's interpretations, issued in the form of Final Agency Determinations ('FADs'), are 'binding on all participants in the Federal crop insurance program.'" Davis, 762 F.3d at 1285 (quoting 7 C.F.R. § 400.765(c)). As the FCIC has explained, "[it] is the only one who can render interpretations" of applicable "policies [and] procedures" because

> [f]ederal crop insurance is a national program with all producers receiving the same policy for the same crop and insurance providers are required to use procedures issued by FCIC in the service and adjustment of such policies to ensure that all producers are treated alike and none receive special benefits or treatment because of the crop they produce, the insurance provider that insures them, or who hears their disputes.

FCIC Response to Comments, 69 FR at 48715.

Facilitating this national uniformity, "Congress has authorized the preemption of state laws or rules that conflict with regulations promulgated and contracts authorized by the FCIC."

11

_J.O.C. Farms_, 737 F. App'x at 654 (citing 7 U.S.C. § 1506(l) & (o)). "Pursuant to this authority, the FCIC has promulgated regulations, applicable to all insurance policies that it reinsures, preempting '[s]tate laws and regulations not consistent with the purpose, intent, or authority of the [FCIA].'" _Id._ (brackets in original) (first quoting 7 C.F.R. § 400.351; then citing 7 C.F.R. § 400.352).

Additionally, "[t]he FCIA's implementing regulations and the CCIP provisions contain several limitations on an insured's pursuit of litigation against the insurer," _id._, including that the insurance provider and insured first submit any unresolved dispute regarding the provider's policy determinations to arbitration, _see_ _id._ at 654-55. "The CCIP and regulations also create a condition precedent to an insured's pursuit of damages, expenses, and fees from the insurer ([at times, ]the 'FCIC []determination requirement')." _Id._ at 655. In this regard, the CCIP first specifies that, "[e]xcept as provided in [Paragraph] 20(i), no award or settlement in mediation, arbitration, appeal, administrative review or reconsideration process or judicial review can exceed the amount of liability established or which should have been established under the policy, except for interest awarded in accordance with [Paragraph] 26." 7 C.F.R. § 457.8, ¶ 20(h). In turn, Paragraph 20(i) specifies:

> In a judicial review only, [the insured] may recover attorney's fees or other expenses, or any punitive,

compensatory or any other damages from [the insurer] only
if [the insured] obtain[s] a determination from FCIC that
[the insurer], [its] agent or loss adjuster failed to
comply with the terms of this policy or procedures issued
by FCIC and such failure resulted in [the insured]
receiving a payment in an amount that is less than the
amount to which [the insured] w[as] entitled.

7 C.F.R. § 457.8, ¶ 20(i); accord J.O.C. Farms, 737 F. App'x at
655.[5]

Reinforcing this approach, the regulations specify that
States:

[cannot l]evy fines, judgments, punitive damages,
compensatory damages, or judgments for attorney fees or
other costs against companies, employees of companies
including agents and loss adjustors, or Federal employees
arising out of actions or inactions on the part of such
individuals and entities authorized or required under the
[FCIA], the regulations, any contract or agreement
authorized by the [FCIA] or by regulations, or procedures
issued by the [FCIC] (Nothing herein precludes such
damages being imposed against the company if a
determination is obtained from FCIC that the company, its
employee, agent or loss adjuster failed to comply with
the terms of the policy or procedures issued by FCIC and
such failure resulted in the insured receiving a payment
in an amount that is less than the amount to which the
insured was entitled) . . . .

7 C.F.R. § 400.352(b)(4)(emphasis added).

**II. Analysis**

**A. Preliminary Matters**

At first glance, some ambiguity exists regarding the precise

contours of Defendant's dismissal argument. (See, e.g., Docket

_____

    5  By contrast, "[u]nder no circumstances can [an insured]
recover any attorney's fees or other expenses, or any punitive,
compensatory or any other damages from FCIC."  7 C.F.R. § 457.8,
¶ 20(e)(3).

13

Entry 7 at 8 (arguing that "the Complaint must be dismissed[]
because [Plaintiff's] causes of action are preempted by federal
law, and he has not complied with the regulatory requirements for
pursuing state law claims and recovering extra-contractual
damages").) Defendant does not, however, maintain that federal law
preempts and precludes Plaintiff's claims in all circumstances.
(See, e.g., id. at 13 (conceding that the FCIA "does not completely
preempt all state law claims against an insurance company").)[6]
Instead, Defendant asserts that federal regulations "preempt[] the
North Carolina statutes on which [Plaintiff] has predicated his
claim for compensatory and statutory damages and costs *unless*
Plaintiff obtains a determination from FCIC that FMH failed to
comply with FCIC policy or procedures. To date, [Plaintiff] has
neither requested nor received such a determination from FCIC."
(Id. at 12 (emphasis in original).)[7]

_____

    6  In any event, such an argument would lack merit.  See,
e.g., FAD-282, https://www.rma.usda.gov/policy-procedure/final-
agency-determinations/final-agency-determination-fad-282 (Nov. 28,
2018) (explaining that "[c]laims arising from misrepresentations,
negligence, etc. would be considered equitable" and that, in
certain circumstances, federal regulations "authorize courts to
consider equitable claims and award attorney's fees, expenses, or
compensatory, punitive, or other extra-contractual damages").

    7  Defendant's memorandum in support of the Motion also
contains a section purporting to provide a "Statement of Undisputed
Facts" (id. at 4) derived from the parties' previous arbitration,
which Defendant maintains "are binding on [Plaintiff]" (id. at 5).
(See id. at 4-8.)  Although Defendant's memorandum asserts that,
"[h]aving lost the arbitration, [Plaintiff] now seeks to nullify
the Award of Arbitrator by pursuing litigation that involves the
same facts and legal principles that were adjudicated in the

14

The latter assertion — that, "[t]o date, [Plaintiff] has neither requested nor received such a determination from FCIC" (id.) — appears neither in the Complaint nor in anything the Complaint references or relies upon. (See generally Docket Entries 5 to 5-2.) As such, the Court ordinarily could not consider this assertion in resolving the Motion. See, e.g., E.I. du Pont, 637 F.3d at 449 ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). However, Plaintiff's opposition to the Motion neither disputes this contention — upon which Defendant's entire dismissal argument rests — nor contests the Court's authority to consider this assertion in resolving the Motion. (See generally Docket Entry 9.) Instead, it maintains that Plaintiff

_____

arbitration" (id. at 8), Defendant fails to develop any argument regarding the purportedly binding nature of the asserted "facts and conclusions of law" (id. at 5). (See id. at 1-15.) Thus, Defendant waived any argument in this regard. See, e.g., Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (explaining that "[a] party waives an argument by failing to present it in its opening brief or by failing to develop its argument — even if its brief takes a passing shot at the issue" (brackets and internal quotation marks omitted)). Moreover, Defendant's insinuation that Plaintiff has acted improperly in pursuing this action after arbitration misses the mark. See, e.g., FAD-282 (explaining that "[c]laims arising from misrepresentations, negligence, etc. would be considered equitable and an arbitrator is not authorized to consider such claims," that, "[i]n accordance with its plain meaning, FCIC interpreted [CCIP Paragraph] 20(i) to authorize courts to consider equitable claims and award attorney's fees, expenses, or compensatory, punitive, or other extra-contractual damages," and that "FCIC acknowledges that there may be a need for both arbitration and judicial review when there are both contract and equitable claims").

15

does not need to obtain an FCIC determination to prevail in this matter.  (See id.)

By failing to contest this allegation, Plaintiff concedes it. See, e.g., Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1667285, at *6-9 (M.D.N.C. Apr. 23, 2010) (explaining that party concedes opponent's argument by failing to address it in party's response and collecting cases).  In addition, he has waived any argument against the Court's consideration of this assertion in resolving the Motion.  See, e.g., Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (explaining that "[a] party waives an argument by failing to present it in its opening brief").  For purposes of resolving the Motion, therefore, the Court accepts that Plaintiff has not sought or obtained the specified FCIC determination.

**B. FCIC determination requirement**

Defendant seeks dismissal of Plaintiff's Complaint for failure to comply with the FCIC determination requirement.  (See, e.g., Docket Entry 7 at 14.)  Plaintiff responds that he does not need to comply with the FCIC determination requirement because it does not apply to his claims.  (See Docket Entry 9 at 10-18.)  Plaintiff's position cannot prevail.

Relying on Pelzer v. ARMtech Insurance Services, Inc., 928 F. Supp. 2d 1071 (E.D. Ark. 2013), and J.O.C. Farms, Plaintiff first maintains that his claims "are not preempted because they do not

16

conflict with the Policy or FCIC regulations" (Docket Entry 9 at 10). (See id. at 10-14.) More specifically, Plaintiff relies on Pelzer for the proposition that "'[s]tate tort claims for negligence, misrepresentation, and fraud do not arise from the policy of insurance itself but from alleged tortious actions taken prior to the agreement being made or that occur outside the scope of the policy.'" (Id. at 11 (quoting Pelzer, 928 F. Supp. 2d at 1078-79).) Plaintiff then maintains that "[t]he Fourth Circuit has cited the *Pelzer* decision with approval." (Id. at 13 (citing J.O.C. Farms, 737 F. App'x at 656).) Accordingly, Plaintiff urges:

> Here, as in *Pelzer* and *J.O.C. Farms*, [Plaintiff's] claims pursuant to North Carolina's Unfair and Deceptive Trade Practice Act and negligent misrepresentation are not preempted because they are not based on a "determination" under the Policy. Rather, these claims arise from FMH's misrepresentations prior to the issuance of the Policy. While reinsured companies should not be exposed to state law damages because they have followed the FCIC's mandated terms and procedures, they should be held accountable for their own tortious conduct arising prior to or outside the scope of the contract.

(Id. at 14.) This argument misses the mark.

To begin, J.O.C. Farms cited Pelzer solely for the proposition that "claims arising from an insurer's determination under the policy are preempted." J.O.C. Farms, 737 F. App'x at 656 (concluding that district court properly dismissed breach of contract, bad faith refusal to settle, and unfair settlement practices claims). Thus, J.O.C. Farms does not signify the United States Court of Appeals for the Fourth Circuit's embrace of

17

Pelzer's assertion that, "[a]s the Tennessee Court of Appeals explained in *Plants[, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02063-COA-R3-CV, 2012 WL 3291805 (Tenn. Ct. App. Aug. 13, 2012)], by virtue of the[] policy provisions and regulations, contract claims against private insurers are preempted but tort claims are not," Pelzer, 928 F. Supp. 2d at 1077; see also id. ("At present, federal crop insurance regulations 'reveal no conflict with state law claims for negligence, misrepresentation, or fraud.'" (quoting Plants, 2012 WL 3291805, *10)). Moreover, in J.O.C. Farms, the plaintiff waived appellate review of the district court's dismissal of its remaining claims (which Plaintiff identifies as for "unfair and deceptive trade practices and fraud" (Docket Entry 9 at 13)), so J.O.C. Farms sheds no light on whether the FCIC determination requirement also applies to those claims. See J.O.C. Farms, 737 F. App'x at 656-57.

Second, as a neighboring court recently explained:

> *Pelzer* relied on an earlier decision from the Tennessee Court of Appeals, *Plants* . . . . While these cases distinguish between contract and tort, they make determinations regarding whether representations are made within or outside the policy. However, since those cases were decided, the *Plants* position has been written out of and is no longer in accord with standard policy terms and regulations[.]

In re Dupree Farms, LLC, No. 18-216-5, 2024 WL 3633272, at *10 (Bankr. E.D.N.C. Aug. 1, 2024). For instance, FAD-240 states, inter alia:

18

The requester interprets 7 CFR § 400.176(b) (and the equivalent language in [Paragraph] 20(i) of the Basic Provisions to the extent that it contains a similar requirement) to preempt any state law claims for extra-contractual damages that FCIC has not approved, since any requests for such damages must include an FCIC determination.

Alternatively, the requester interprets 7 CFR § 400.176(b) to require the [p]laintiff in a state court proceeding to obtain a determination from FCIC before any claim for compensatory damages or therein [sic] can be awarded, even when those extra-contractual damages claims are based upon state law tort claims. In other words, if a policyholder asserts a tort claim that relates in any way to a Federally-reinsured crop insurance policy, such as misrepresentation regarding policy requirements, the policyholder must obtain an FCIC determination before he may recover any extra-contractual damages.

The requester is aware that FAD-99 addressed a similar request, but recent case law from the Tennessee Court of Appeals (*Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 561 (Tenn. Ct. App. Aug. 13, 2012)), as well as another civil action between the same two parties, *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 562 (Tenn. Ct. App. Aug. 13, 2012)) addressing similar issues have held that neither 7 C.F.R. § 400.176(b) nor Basic Provisions [Paragraph] 20(i) preempts state law claims for misrepresentation, finding that no FCIC determination is necessary for a Federal crop insurance program participant to seek extra-contractual damages for misrepresentation in state court. The requester believes that these court decisions are incorrect because they are counter to 7 CFR § 400.176 and the policy terms.

FAD-240, https://legacy.rma.usda.gov/regs/533/2015/fad-240.html (Aug. 26, 2015).

In response to this proposed interpretation, the "FCIC agree[d] with the requestor. Any claim, including a claim for extra-contractual damages solely arising from a condition related to policies of insurance issued pursuant to the [FCIA], may only be

19

awarded if a determination was obtained from FCIC in accordance
with [Paragraph] 20(i) of the Basic Provisions and § 400.176(b)."
FAD-240.[8]  The FCIC further agreed

> that 7 CFR § 400.176(b), and the equivalent language in
> [Paragraph] 20(i) of the Basic Provisions preempts any
> state law claims that are in conflict.  That means that
> to the extent that State law would allow a claim for
> extra-contractual damages, such State law is pre-empted
> and extra-contractual damages can only be awarded if FCIC
> makes a determination that the AIP, agent or loss
> adjuster failed to comply with the terms of the policy or
> procedures issued by the [FCIC] and such failure resulted
> in the insured receiving a payment in an amount that is
> less than the amount to which the insured was entitled.

FAD-240; see also, e.g., FAD-251, https://legacy.rma.usda.gov
/regs/533/2015/fad-251.html (Dec. 17, 2015) (holding that "any
claim, including a claim for extra-contractual damages, that arises
under or is related to a Federal crop insurance policy issued
pursuant to the [FCIA] may only be awarded if a determination is
obtained from FCIC in accordance with [Paragraph] 20(i) of the
[CCIP] Basic Provisions and §400.352" (emphasis added)).  Per the
FCIC, "[t]o the extent that State courts have awarded
extra-contractual damages without first obtaining a determination
from FCIC, such awards are not in accordance with the law."  FAD-
240.

---

8  Plaintiff notes that "7 C.F.R. § 400.176 was repealed on
October 11, 2018."  (Docket Entry 9 at 6 n.2.)  However, "the
equivalent language in [Paragraph] 20(i) of the Basic Provisions,"
FAD-240, still applies, see, e.g., 7 C.F.R. § 457.8, ¶ 20(i).

Moreover, the FCIC has explicitly held that the FCIC determination requirement applies to "[c]laims arising from misrepresentations, negligence, etc.," FAD-282, https://www.rma.usda.gov/policy-procedure/final-agency-determinations/final-agency-determination-fad-282 (Nov. 28, 2018), which it has described as equitable claims that seek extra-contractual damages, see, e.g., FAD-282.[9] See also, e.g., In re Dupree Farms, 2024 WL 3633272, at *13 ("Per the regulations, a determination from the FCIC is the pre-requisite for eligibility to pursue extra-contractual damages."); FCIC Response to Comments, 69 FR at 48726 ("[Paragraph] 20 now states no award in litigation can exceed contractual damages unless FCIC determines the insurance provider, agent, or loss adjusters failed to follow FCIC approved policy or procedure."). As the FCIC explained in a recent amicus brief:

> According to the clear language of the policy, any extra-contractual damages, including damages arising from state claims, [a]re only available after [a c]ourt [i]s asked to review [an] arbitrator's award. See 7 C.F.R. § 457.8, ¶ 20(i). As noted by FCIC, any extra-contractual claims (i.e. negligence, breach of fiduciary duty, constructive fraud, unfair and deceptive practices) and attorneys' fees are limited solely to instances where FCIC has determined the insurance provider violated its policies and procedures and such

---

[9] Extra-contractual damages include attorney's fees and awards "based on state law claims including negligence, breach of fiduciary duty, constructive fraud, and unfair and deceptive trade practices." Williamson Farm v. Diversified Crop Ins. Servs., No. 5:17-cv-513, 2018 WL 1474068, at *5 (E.D.N.C. Mar. 26, 2018), aff'd, 917 F.3d 247 (4th Cir. 2019).

> violation had a monetary impact on the payment of the claim. *See* FCIC Response to Comments, 69 Fed. Reg. 48652-01, 48717 (Aug. 10, 2004). Thus, the plain and unambiguous terms of [Paragraph] 20(i) of the policy (7 C.F.R. § 457.8, ¶ 20(i)), together with the plain and unambiguous language of 7 C.F.R. § 400.176(b) and 7 C.F.R. § 400.352(b)(4), unequivocally dictate that a party can only be awarded extra-contractual damages and attorneys' fees upon petitioning th[e c]ourt for review of the arbitrator's award and then only after obtaining a determination from FCIC.

Williamson Farm, 917 F.3d at 254 (internal quotation marks omitted) (emphasis added).

Nevertheless, Plaintiff maintains that the FCIC did not intend the regulations (and particularly Section 400.352) to apply in this context, suggesting that the FCIC determination requirement serves no useful purpose here. (See Docket Entry 9 at 14-18.) According to the FCIC, though,

> insurance providers may have been at risk for punitive or extra contractual damages in litigations even though they may not have violated FCIC's policies or procedures. This risk poses a considerable program integrity issue since it can affect the manner in which insurance providers manage their litigations and could result in increased costs to taxpayers. Therefore, FCIC has revised [Paragraph] 20, and made conforming amendments to 7 CFR 400.176(b) and 400.352(b)(4), to limit the imposition of punitive and other extra contractual damages, attorney['s] fees and other costs to those situations where FCIC has determined the insurance provider violated its policies and procedures and such violation had a monetary impact on the payment of the claim. FCIC will be making the determinations because, as authors of the policy or procedure, FCIC is in the best position to know whether an action constitutes a violation and to ensure the uniform application of the policies and procedures.

FCIC Response to Comments, 69 FR at 48717.

Further, under the regulations, an insured cannot "recover any attorney's fees or other expenses, or any punitive, compensatory or any other damages from [the] FCIC." 7 C.F.R. § 457.8, ¶ 20(e)(3). Upon the FCIC's determination that an insurer failed to comply with FCIA policies and procedures, however, a court can award an insured attorney's fees, punitive, and other extra-contractual damages against an insurer. See, e.g., Williamson Farm, 917 F.3d at 257. Yet, "[i]f an insurance provider and its agent and loss adjuster have followed FCIC's policy and procedures in handling the policy, there is no basis to deny reinsurance . . . . It is only where the insurance provider, agent or loss adjuster committed an error or omission that reinsurance is at risk." FCIC Response to Comments, 69 FR at 48716. As such, by ensuring that an insured can only recover extra-contractual damages and attorney's fees in situations where the insurer failed to adhere to the FCIC's policies and procedures, the FCIC determination requirement serves a useful function even in cases, such as this one, raising equitable claims against an insurer.

In sum, under binding authority, the FCIC determination requirement applies to all claims seeking extra-contractual damages related to a federally reinsured crop insurance policy. Here, Plaintiff alleges that Defendant engaged in negligent misrepresentation that adversely affected his recovery under the Policy and that, through its actions regarding the Policy,

23

Defendant committed unfair and deceptive trade practices. (<u>See</u> <u>generally</u> Docket Entries 5 to 5-2.)[10] Thus, Plaintiff seeks recovery of extra-contractual damages related to a federally reinsured crop insurance policy, triggering the FCIC determination requirement. <u>See, e.g.</u>, FAD-282.

As discussed above, Plaintiff does not dispute that he failed to obtain such determination before initiating this action. However, "FCIC determinations are only required during judicial review involving extra-contractual damages," <u>Williamson Farm</u>, 917 F.3d at 256 n.7, and can only be sought after initiating court action, <u>see, e.g.</u>, FAD-193, https://legacy.rma.usda.gov/regs/533/2013/fad-193.html (Oct. 21, 2013) (rejecting suggestion that "the FCIC determination . . . must be obtained prior to the insured filing a petition in a court of competent jurisdiction"). As the FCIC has explained:

> The reference to "judicial review only" [in Paragraph 20(i)] is to clarify that such damages can only be sought during an appeal to the courts, after an FCIC determination has been obtained, and cannot be awarded in arbitration. To obtain a determination that will enable

_____

10  Notably, this case does not involve a situation "where misrepresentations or negligence on the part of the insurance agent before the policy was issued left the claimant effectively uninsured under the federal crop insurance program. Here, [Plaintiff] sought contractual damages and participated in arbitration pursuant to the insurance policy." <u>Williamson Farm</u>, 917 F.3d at 256 n.8; <u>see</u> <u>id.</u> ("not[ing] that [the Fourth Circuit's] decision . . . does not address whether a claimant could recover purely tort damages against a private insurance company without such an FCIC determination [under those circumstances]").

24

the insured to recoup attorney's fees, expenses, or
damages from the AIP, the insured must send a request for
a determination to the RMA Deputy Administrator of
Compliance after the insured has filed an appeal for
judicial review. The procedural timing of when the
insured must request the determination when they are
seeking judicial review depends upon when the insured
requests attorney's fees and the rules of the court for
such requests.

FAD-193.

Defendant tacitly acknowledges that Plaintiff's failure to
obtain this determination prior to filing suit does not preclude
this action. (See, e.g., Docket Entry 13 at 1 ("Unless and until
[Plaintiff] satisfies the conditions precedent established by FCIC
for the recovery of extra-contractual damages, the causes of action
set forth in the Complaint are preempted, and the Complaint must be
dismissed.").)[11] Nevertheless, Defendant seeks dismissal of the
Complaint due to Plaintiff's failure to "satisf[y] this threshold
requirement." (Docket Entry 7 at 14.) Notably, though, Plaintiff
did not oppose the Motion on the grounds that he had sought or
needed time to seek the necessary FCIC determination. (See
generally Docket Entry 9); cf. In re Dupree Farms, 2024 WL 3633272,

_____

    11  Conversely, Plaintiff incorrectly suggests that such
determination must occur prior to the filing of any suit. (See
Docket Entry 9 at 2 ("FMH is 'immune' from state rules,
regulations, laws, policies or decisions if there is no
determination by the FCIC prior to the policyholder filing suit
that the insurer failed to comply with the FCIC's mandatory policy
terms and procedures. This is to ensure that FCIC's policies and
procedures are enforced uniformly nationwide. FMH is not 'immune'
from fraud committed to procure the policy or that occurred outside
the scope of the policy.").)

at *4 (explaining that, after the defendant sought summary judgment on the grounds that the plaintiff had failed to comply with the FCIC determination requirement, "[the plaintiff] requested the FCIC to authorize extra-contractual damages"). Given that Plaintiff cannot recover on his claims without the requisite FCIC determination, the Court will order Plaintiff to show cause why the Complaint should not be dismissed pending compliance with the FCIC determination requirement.

<u>**CONCLUSION**</u>

The FCIC determination requirement applies to Plaintiff's claims.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 6) is **GRANTED** insofar as the Court concludes that the FCIC determination requirement applies to Plaintiff's negligent misrepresentation and unfair and deceptive trade practices claims.

**IT IS FURTHER ORDERED** that, by October 15, 2024, Plaintiff must **SHOW CAUSE** why the Court should not dismiss this action pending compliance with the FCIC determination requirement. Defendant may file a response within 21 days of any filing by Plaintiff, and Plaintiff may file a reply thereto within 7 days. Upon completion of this briefing or on November 13, 2024, whichever

occurs earlier, the Clerk shall refer this matter back to the undersigned.

This 23rd day of September, 2024.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

Case 1:23-cv-00817-LPA   Document 16   Filed 09/23/24   Page 27 of 27